J-A09006-26                    2026 PA Super 183

PAOLO RANDAZZO                    :    IN THE SUPERIOR COURT OF
                                  :              PENNSYLVANIA
                                  :
          v.                      :
                                  :
                                  :
                                  :
OLIVIA PASSANITA                  :
                                  :
          Appellant               :    No. 1489 WDA 2025
                                  :

Appeal from the Order Entered October 24, 2025
In the Court of Common Pleas of Blair County Civil Division at No(s):
2021 GN 1401

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and SULLIVAN, J.

OPINION BY NICHOLS, J.:                    **FILED: AUGUST 12, 2026**

Appellant Olivia Passanita (Mother) appeals from the custody order modifying her custodial rights to S.P. (Child). Mother claims that the trial court impermissibly delegated a matter of primary physical custody to be heard by a hearing officer and improperly weighed the custody factors. We vacate and remand.

As stated in the trial court opinion,

[Child was] born in April [of] 2019. Prior to the current litigation, the controlling order of court was [entered on] May 23, 2022.[1] The current litigation began when [Paolo Randazzo (Father)] filed a petition to modify custody on January 24, 2024[, requesting "a 50/50 shared custody arrangement."]2 Evidentiary hearings were held before custody hearing officer Ilissa Zimmerman, Esq[. (HO)]

_____

[1] The custody order of May 23, 2022 states that the parties "share the legal and physical custody" of Child and that "Father shall have partial custody of [Child]" pursuant to a detailed schedule. Trial Ct. Order, 5/23/22.

[2] Father's Modification Pet., 1/24/24, at 2.

on September 27, 2024; November 8, 2024; and January 30, 2025.[3]

Trial Ct. Op., 12/23/25, at 1 (some formatting altered).

"In [Father's] petition to modify custody, he requested a 50/50 equal shared physical custody schedule. . . .  The gist of [Father's] request was for additional time with [Child]." *Id.* at 3.  At the hearings before the HO, Mother testified to incidents in which Child had been physically harmed by members of Father's household, whereas Father and Father's wife, Betsy Randazzo (Father's Wife), denied these allegations.  *See* HO's Rpt., 3/10/25, at 17-18. Father described Child as spontaneously affectionate to Father, that is, Child would give "give [Father] a hug and kiss before he walked into school," whereas Mother testified that Child dreaded spending time with Father to such an extent that he had "full-blown meltdowns . . . almost every time he had to go to his father . . . there was kicking, screaming, yelling I don't want to go . . . please don't make me go."  N.T., 9/27/24, at 12; N.T., 11/8/24, at 86-87.

> The HO [filed] a report and recommendation . . . on March 10, 2025.  Exceptions to the report and recommendation were filed on March 28, 2025 by [Mother.[4]  The trial] court heard argument

---

[3] Prior to the hearings before the HO, on June 21, 2024 Mother filed a request for an evidentiary hearing before the trial court, noting therein that she currently maintained "primary physical custody" of Child.  Mother's Req. for Evidentiary Hrg., 6/21/24.  The record does not contain an order responding to Mother's request.

[4] In her exceptions, Mother took issue with the HO concluding that "the allegation against [Father's Wife]" – that is, Mother's testimony that Father's Wife physically harmed Child – "does not weigh against shared custody."
*(Footnote Continued Next Page)*

- 2 -

on the custody exceptions on July 11, 2025. [The trial] court authored an opinion [and] order on October 24, 2025 deciding [Father's] petition to modify custody. [Mother] filed a motion for reconsideration . . . on November 7, 2025 [which the trial court denied] on November 14, 2025.

Trial Ct. Op., 12/23/25, at 2-3 (some formatting altered).

Mother filed a timely notice of appeal and both Mother and the trial court complied with Pa.R.A.P. 1925.

On appeal, Mother raises the following claims:

1. Whether the trial court erred, as a matter of law, by failing to rule that the scheduling of this case before a hearing officer was improper under the applicable statues, rules of court, and case law because of [Father's] request for equally share physical custody affecting primary physical custody.

2. Whether the trial court erred, as a matter of law, by failing to schedule a *de novo* evidentiary hearing before the court on [Father's] request for equally shared physical custody affecting primary physical custody.

3. Whether the trial court erred, as a matter of law, by ruling that the failure to hold a *de novo* evidentiary hearing in this case was cured by a "thorough review" of the record established before the hearing officer.

---

Mother's Exceptions, 3/28/25, at 3 (unpaginated). Mother also took exception, *inter alia*, to the HO's conclusions that the custody factors favored an equal shared custody schedule based on the factors of Child's well-reasoned preferences, the attempts of each parent to turn Child against the other parent, each parent's extended family resources, and each parent's availability to care for Child. **See id.** at 5-6. In her brief in support of her exceptions, Mother argued that the HO "erred in failing to make any findings of fact or credibility determinations regarding substantial testimony and evidence presented concerning [Child's] safety while in Father's care, specifically involving repeated allegations of physical harm caused by [Father's Wife]." Mother's Exceptions Brief, 6/2/25, at 11.

> 4. Whether the trial court erred and/or abused its discretion by not properly weighing the custody factors and by entering an order contrary to the best interests of [Child].

Mother's Brief at 9-10.

Mother's first three claims are related to the same alleged legal defect, namely that the trial court erred in scheduling Father's petition to modify custody before a hearing officer rather than directly by the court. *See id.* at 21-41. Characterizing Father's petition as having raised issues of primary custody that "can be heard only by a trial judge and not a hearing officer," Mother argues that the HO did not have "legal authority [to hear] a matter relating to primary physical custody." *Id.* at 22, 24 (some formatting altered). While Mother herself had petitioned to eliminate one of Father's overnight visits with Child, a request that she concedes raised only an issue of partial custody, Mother contends that nonetheless primary custody had been raised due to Father's request for equal shared custody. *Id.* at 27. Mother further argues that the hearing officer lacked the legal authority to modify custody from primary custody with Mother to an equally shared physical custody schedule. *Id.* at 28. Mother also contends the trial court mistakenly relied on Pa.R.Civ.P. 1915.4-1(b) to conclude that the matter could be heard by a hearing officer because Rule 1915.4-1 applies only to actions for partial custody. *Id.* at 29-30.

Upon the HO recommending modification of the award of primary custody, Mother argues that the trial court should have then scheduled a *de novo* evidentiary hearing because "the important matters of primary or shared

physical custody of minor children must be heard by the trial court and not delegated to a hearing officer." *Id.* at 30-32. Mother contends that, upon her objection to the HO's recommendation, which adversely impacted her right to primary custody of Child, the trial court was required to schedule the matter for a *de novo* evidentiary hearing before the court. *See id.* at 31.

Having failed to hold the required *de novo* evidentiary hearing, Mother argues that the trial court failed to cure this defect by conducting a review of the record as established by the HO. *See id.* at 32-41. Noting a recent Blair County opinion that had addressed an "identical issue," Mother contends that a record review does not equate to an "adjudication in the first instance" and, where the parties still disputed relevant facts, the trial court was required to make its own fact-findings and credibility determinations rather than relying on the HO's findings and credibility determinations. *Id.* at 34-40 (citing *Greiner v. Greiner*, 2018 GN 2700 (Blair Cty. Common Pleas filed Mar. 24, 2025)).

Father contends that he did not raise "a matter relating to primary custody" because in his petition he only requested additional physical custody rights to Child and did not specifically ask for primary custody of Child. Father's Brief at 22-24.

In her last claim, Mother contends that the trial court abused its discretion in weighing the custody factors and, ultimately, failed to act in Child's best interests. Mother's Brief at 41-54. Specifically, Mother argues, *inter alia*, that the evidence established that she provided a more stable

environment for Child because she had attended to the majority of Child's healthcare needs, was more involved in Child's extracurricular activities, and had greater extended family resources than Father. *See id.* at 43-45. Comparing the parties' availability to care for Child, Mother argues that her work schedule as a teacher matched well with Child's school schedule, whereas Father owned and managed several food service businesses and consequently had less flexibility and availability to care for Child's needs and to attend Child's extracurricular activities. *See id.* at 46-47. Mother contends that she presented evidence that Father had failed to ensure that Child timely attended therapy sessions and never attended any of Child's soccer practices or games, whereas Father testified that he had a flexible work schedule and was available to care for Child, but did not rebut Mother's evidence. *See id.* at 47-48. Mother claims that the evidence established that Father had attempted to turn Child against Mother, citing her testimony about Father's negative and insulting comments about and towards Mother, as well as Father's inappropriate and demeaning conduct towards Mother while in Child's presence. *See id.* at 49-50. Mother asserts that the trial court should have given more weight to Child's consistent preference not to spend time with Father, rather than dismissing Child's preference as influenced by Mother's own reaction to Father. *See id.* at 51-53.

Father argues that the custody order of October 24, 2025 served Child's best interests by providing Father with more consistent time with Child during the school year and only required Child to change households three times per

week, whereas the prior order required Child to transition between households five to six times per week. **See** Father's Brief, at 21.

We review custody orders for an abuse of discretion, applying a broad scope of review and deferring to the trial court's determinations of credibility and the weight of the evidence. **See McGee v. McDowell**, 333 A.3d 383, 389 (Pa. Super. 2025).[5] The trial court's deductions and inferences, however,

> do not bind this Court, and we may reject [such] conclusions if they involve an error of law or an unreasonable in light of its factual findings. In addition, a challenge to a court's process is a question of law for which our standard of review is *de novo* and our scope of review is plenary.

**Id.** (citation omitted and some formatting altered).

The option for a hearing officer, rather than a trial court judge, to hold an evidentiary hearing on a partial custody matter was introduced when our Supreme Court promulgated Pa.R.Civ.P. 1920.91 in 1980. **See** 23 Pa.C.S. § 3321, Pa.R.Civ.P. 1920.91(3) (current and prior versions).[6] Our Supreme Court explained that the rule was introduced to allow a hearing officer to hear certain partial custody matters but noted that "there is no similar provision . . . [for] **primary physical custody issues**" and reiterated that only "a trial

---

[5] Credibility determinations are made by the "trier of fact who had the opportunity to observe the witnesses' demeanor." **Commonwealth v. Beatty**, 207 A.3d 957, 961 (Pa. Super. 2019) (citation omitted).

[6] Both the prior and current versions of Pa.R.Civ.P. 1920.91 contain identical language related to the ability of hearing officers to hear partial custody matters. **See id.**

judge and not a master or hearing officer may make determinations **related to primary physical custody matters**." ***Van Dine v. Gyuriska***, 713 A.2d 1104, 1105 (Pa. 1998) (citation omitted, emphasis added).[7]  Prior to July 1, 1980, the effective date of Rule 1920.91, parties to a custody dispute had "a right to a *de novo* hearing in all custody matters," particularly if that party was "unwilling to accept the result of the proceeding before a [hearing officer]." ***Id.*** (some formatting altered); ***see also id.***  at 1105 n.4 (noting that a "*de novo* hearing is required in a custody action if one of the parties believes that it is necessary for the trial court to directly perceive the live testimony of witnesses and evidence" (citation omitted)).

Rule 1920.91(3) therefore established an alternative procedure – *i.e.*, no longer requiring a *de novo* hearing before a trial court judge – for certain partial custody matters.  ***See McGee***, 333 A.3d at 390 (holding that matters relating to primary physical custody must still be heard by a trial court judge rather than a hearing officer); ***Raymond v. Raymond***, 279 A.3d 620, 626 (Pa. Super. 2022) (holding that, while the rules of civil procedure for custody matters "authorize the appointment of a hearing officer to adjudicate actions for **partial** custody, it is well settled that actions for **primary** custody must be heard by a trial court judge" (citing, *inter alia*, Pa.R.Civ.P. 1915.4-1(a))). Rule 1915.4-1 and Rule 1915.4-2, in turn, set forth the alternative hearing

---

[7] We note that the term 'hearing officer' is the functional equivalent of the term 'master' in custody adjudications and, further, that 'master' is "now a disfavored term" in this context.  ***See McGee***, 333 A.3d at 391 n.7 (citation omitted).

procedure under which "an action for partial custody may be heard by a hearing officer" and permit that officer to then "make a recommendation . . . relating to partial custody or supervised physical custody," as contemplated in Rule 1920.91(3). *See* Pa.R.Civ.P. 1915.4-1(a), 4-2(a)(3).

To determine whether a physical custody matter relates to primary or partial custody, we note that "primary physical custody" is defined by statute as "the right to assume physical custody of the child for the majority of the time," while "partial physical custody" is "the right to assume physical custody of the child for less than a majority of the time." 23 Pa.C.S. § 5322 (some formatting altered). "Shared physical custody" is defined as "the right of more than one individual to assume physical custody of the child, each having significant periods of custodial time with the child." *Id.*

The question of whether equally shared or 50/50 physical custody falls within the purview of primary or partial physical custody is not addressed by either statute or rule. This Court, however, has treated an equally shared or 50/50 physical custody award as distinct from an award of primary custody. *See Johnson v. Lewis*, 870 A.2d 368 (Pa. Super. 2005). In *Johnson*, the parties had agreed to a temporary custody award wherein the mother had primary physical custody and the father had partial physical custody of their child. *See id.* at 371. The trial court then entered an order awarding "shared physical custody, with [the child] alternating weeks at his parents' separate homes." *Id.* The *Johnson* Court noted that, while the father "had originally wanted primary custody, [he was] satisfied with the trial court's decision." *Id.*

We glean from this language that equally shared or 50/50 physical custody does not equate to primary physical custody. *See id.*

This Court has previously addressed whether a trial court may cure its error in allowing a primary physical custody matter to be heard by a hearing officer rather than by the trial court. In *Raymond*, the trial court appointed a hearing officer to address the question of whether the grandparents of a child had standing to seek custody of that child and, after the grandparents filed exceptions to the officer's report, denied their request for an evidentiary hearing. *See Raymond*, 279 A.3d at 626. *Raymond* held that the trial court had erred in scheduling the grandparents' complaint for sole custody before a hearing officer because "actions for **primary** custody must be heard by a trial judge." *Id.* (citations omitted). *Raymond* concluded, however, that the trial court effectively cured its error because

> none of the salient facts were disputed [and the trial court] applied those facts to render new legal conclusions and independently determined the merits of the grandparents['] claims. Thus, the trial court's exceptions review was akin to an adjudication of standing in the first instance. [T]he essential facts were uncontested, and the standing issue turned on a pure question of law.

*Id.* at 626-27 (citations and footnote omitted).

In *McGee*, the mother sought primary custody of the child and the trial court scheduled the matter to be heard by a hearing officer and then accepted the officer's recommendation and adopted it as an order of court. *See McGee* 333 A.3d at 386-88. Thereafter, the father filed exceptions, which the trial

court denied without hearing. *See id.*[8] *McGee* concluded that the trial court erred in allowing a matter of primary custody to be heard by a hearing officer but recognized that the trial court could cure the error pursuant to the framework set forth in *Raymond*. *Id.* at 390-92. Ultimately, however, *McGee* concluded that "the error was not cured because . . . the court's exceptions review was 'not akin to an adjudication in the first instance.'" *Id.* at 391 (citation omitted and some formatting altered).

Here, Father's petition sought to modify the custody order of May 23, 2022, which had awarded Father partial custody, to an equal shared physical custody schedule. *See* Father's Pet., 1/24/24; *see* 23 Pa.C.S. § 5322. While equal shared or 50/50 physical custody is distinct from primary custody, the consequence of granting Father's request was Mother's loss of her primary physical custody rights, as established in the May 23, 2022 custody order. *See Johnson*, 870 A.2d at 371; *see* 23 Pa.C.S. § 5322. In her request for an evidentiary hearing before the court, filed prior to the hearings held by the HO, Mother informed the trial court that her right to primary custody was at stake by stating that she currently maintained "primary physical custody" of Child. *See* Mother's Req. for Evidentiary Hrg., 6/21/24.

At the heart of Mother's improper delegation claim is the question of whether a custody action is "related to primary physical custody matters"

---

[8] The record in *McGee* reflects that an exceptions hearing was scheduled but does not reflect that any such hearing occurred prior to the entry of the order denying the exceptions. *See id.* at 387-388.

where it does not, within the four corners of the petition or filing itself, state a request for primary custody but would, if granted, divest the other parent or party of the right of primary physical custody. Ultimately, having not identified any authority directly answering this question, we conclude that Father's custody action here "related to primary physical custody" because granting it would divest Mother of her established right to primary physical custody of Child. *See Van Dine*, 713 A.2d at 1105.[9] Accordingly, the trial court erred in appointing a hearing officer to hear the parties' custody modification petitions. *See id.*; *McGee*, 333 A.3d at 390; *Raymond*, 279 A.3d at 626; *see also* Pa.R.Civ.P. 1920.91, 1915.4-1.

Here, the trial court explained that it considered the HO's recommendation "that an equal physical custody schedule was in the best interest of [Child]" and, after its review of the record established by the hearing officer, entered an order that in fact awarded Mother with more custodial time than Father over the course of the year. *See* Trial Ct. Op., 12/23/25, at 3. Referencing *McGee*, the trial court urges us to find that, if it erred, it cured its "erroneous appointment of a [HO] . . . by conducting a

_____

[9] While not controlling or persuasive authority, we note that in the Blair County opinion of *Greiner*, similar to the facts at issue here, one parent had primary physical custody of the child and the other parent had petitioned for "equally shared physical custody." Mother's Mot. for Recons., 11/7/25, at Ex. A,. In the *Greiner* opinion, the Honorable David B. Consiglio concluded that, because the petitioning parent's request for "50/50 custody" or "equal shared custody" of the child "would divest [the other parent] of primary physical custody" or, in order words, "result in the removal of primary custody from [the other parent], it 'relates to primary physical custody' and therefore must be heard by the [trial] court." *See id.* at 7 (unpaginated).

- 12 -

thorough *de novo* review." Trial Ct. Op., 12/23/25, at 4 (citing **McGee**, 333 A.3d at 391) (some formatting altered); **see also id.** at 5 (urging this Court to interpret "the rules [to] support[] the efficient administration of justice"). The trial court asks us to conclude that it conducted a curative *de novo* review because it

> read the entirety of the transcript of the evidentiary hearing before the [HO,] reviewed the entirety of the exhibits and other submissions [,] independently reviewed the custody factors[, and] authored an opinion which laid out [the trial court's] thinking as to what was in the best interest of [Child]. While [the trial court] indicated that [it] did not take issue with some of the factual statements by the [HO], this court entered an order of custody based on [its] own assessment of what was in the best interest of [Child and] gave no deference to the [HO's] decision.

Trial Ct. Op., 12/23/25, at 4-5.

Where there is no material issue of fact and the trial court is solely tasked with interpreting and applying the law to undisputed facts, a thorough review of the record may be sufficient for a trial court to cure the error of delegating a primary physical custody matter to be heard by a hearing officer. **See Raymond**, 279 A.3d at 626-27. Here, however, issues of disputed fact remained, as evidenced by Mother's exceptions which, *inter alia*, took issue with the HO's failure to make specific findings of fact or credibility determinations when analyzing the custody factors after the parties presented conflicting testimony. **See** Mother's Exceptions Brief, 6/2/25, at 11; **see also** N.T., 9/27/24, at 12; N.T., 11/8/24, at 86-87. While "the efficient administration of justice" is always a goal in the courts of this Commonwealth,

we conclude that the trial court's review of the record as established by the HO does not equate to "directly perceiv[ing] the live testimony of witnesses and evidence." ***Van Dine***, 713 A.2d at 1105 n.4 (citation omitted); ***see*** Trial Ct. Op., 12/23/25, at 5. In other words, the trial court was never in a position to assess the credibility of the parties or weigh the evidence, except from a cold record. ***See Beatty***, 207 A.3d at 961; ***see also Baumert v. Baumert***, 622 EDA 2024, 2025 WL 323330, at *11 (Pa. Super. filed Jan. 28, 2025) (unpublished mem.) (wherein, in a child support matter, this Court adopted the trial court's opinion which stated, "in arriving at findings, the fact-finder's assessment of the credibility of the parties is paramount because it is the fact-finder that sees and hears the witnesses testify").[10]

Because the trial court's review of the record did not place it in a position to make its own assessments of weight and credibility with regard to the testimony and other evidence, here the trial court did not, itself, make any fact-findings. Accordingly, there are no weight or credibility determinations made by the trial court to which this Court must defer. ***See McGee***, 333 A.3d at 389. Further, as a matter of law, we conclude that the trial court failed to cure its error by conducting a '*de novo* review' of the record established by the HO and by hearing argument on Mother's exceptions, no matter how

_____

[10] ***See*** Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

thorough and conscientious was its review.[11]  *See Raymond*, 279 A.3d at 626; *see McGee*, 333 A.3d at 387-88, 390-92.

Therefore, "[w]ithin 21 days of this decision, the parties shall advise the trial court whether they still seek judicial resolution of their custody matter. If so, the court shall confer with the parties and promptly schedule proceedings consistent with the applicable legal authority." *McGee*, 333 A.3d at 393.

Order vacated and matter remanded.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/12/2026

---

[11] Because we vacate the order appealed from in response to Mother's first three claims, we need not address Mother's remaining claim that the trial court erred in weighing the custody factors.

- 15 -